## Joseph W. Field *vs.* Andrew Weir et al.

It has been settled by numerous decisions of this court, that it is error to submit a cause to a jury upon issue joined, without disposing of a demurrer to the pleas interposed by the defendant; but in this case if the entry on the record can be held to amount to a demurrer at all, the plea demurred to was filed after the time limited by the statute for making up the pleading in the case. *Held,* that the plea was a nullity, and it was not incumbent upon the plaintiff to answer it. 11 S. &. M. 411, cited and confirmed.

It nowhere appears that any objection was raised by either party, based upon the fact that the demurrer was undisposed of; and it may fairly be presumed that the plaintiff in error was not thereby injured, or that the plea itself was waived.

Where a joint demurrer is filed to several counts in a declaration, and all the counts but one are obnoxious to the exceptions taken to them, the demurrer should be overruled.

The rights of the equitable owner of securities for the payment of money, are recognized to a limited extent in courts of law, which will give them every aid consistent with their established modes of procedure: hence, the right of an equitable assignee to use the name of the person holding the legal title in a suit upon an instrument for the payment of money, may be investigated in a court of law; and if found not to exist, a recovery will be defeated. *Held,* in such a case, the legal title is not drawn in question, but only the right of party claiming the equitable interest to put in issue the legal title of his assignor.

It has been held in other States, and no case of a contrary doctrine can be found, that the owner of the legal title in an action at law can be defeated, where suit is brought in his own name, upon the isolated allegation that the equitable interest was in another.

Unless instructions asked to a jury and incorporated in a record, are marked by the clerk "as given or refused," or the record shows directly that they were given or refused, the high court of errors and appeals will notice them.

It is well settled that a compromise of conflicting and doubtful claims, or the giving up a suit or proceeding instituted to try a question respecting which the law is doubtful, is a sufficient consideration to support an agreement or a promise to pay a stipulated sum.

A person may become equitably entitled to the benefit of a contract, without there having been any formal assignment, or a transfer by delivery to him.

The second and third instructions asked by the appellant, were properly refused by the court below.

The payment of the judgment on the injunction bond, could in nowise be held

to extinguish the contract on which this suit was brought. *Held*, that the plea of former recovery was not valid, and was no bar to the action.

IN error from the circuit court of Lowndes county; Hon. F. M. Rogers, judge.

The declaration first filed in this case contains three counts; the first and third are special, and the second upon an account stated.

At April term, 1845, the defendant below plead the general issue, and second, the plea of former recovery.

To the plea of former recovery the plaintiff replied, " *Nul tiel record.*"

At October term, 1846, the plaintiffs filed an amendment to their declaration, adding thereto three new counts.

To the declaration as amended, the defendant pleaded another plea, former recovery to the first and second counts, and demurred to the third, fourth, fifth, and sixth counts.

To the plea of former recovery, the record shows a " demurrer in short by consent," signed ————. This demurrer has not been disposed of.

The plaintiff in error held possession of certain negroes, supposed to be liable to an execution in the name of Abert, for the use of the Commercial Bank of Columbus against Pearl, Jones, and Leech, which had been assigned to the trustees of said bank, Weir and others, the nominal plaintiffs in this suit.

Hand and Huddleston (the defendants in error) were liable for the amount of said judgment, as the securities of said Jones, on an injunction bond to enjoin said judgment.

Execution had been levied on the negroes in Field's possession, all of which were discharged except Joe and Marinda, who were regarded as undoubtedly liable, and the others were thought to be liable in equity.

In this state of things, a negotiation was had between said Field, James T. Harrison, as the attorney of the Commercial Bank and its trustees, and Abram Murdock, as the agent of Hand and Huddleston, the securities, by which it was finally agreed, that Joe and Marinda should be released from said execution, in consideration of the unconditional promise of

Field to pay $1,200 to said trustees on the 1st of January, 1843. It was further agreed, that Field should have an interest to that amount ($1,200) in said judgment, after the balance of said judgment should be collected from the defendants; or in other words, that Field should have the remaining $1,200 after the rest of said judgment was paid.

Hand and Huddleston paid the whole amount of said judgment recovered against them in an action on the injunction bond, and that at the time of payment by them, it was understood between them and the owners of the judgment that they were to have the $1,200 agreed to be paid by Field on the original judgment, which, as securities on the injunction bond, they were thus compelled to pay. The negotiation with Field in relation to the release of Joe and Marinda, was made for the benefit of Hand and Huddleston, said securities, and to save them from loss, and that they really controlled the execution at the time. Field got possession of Joe and Marinda from the sheriff by virtue of this arrangement, and has held them ever since without molestation. That the contract thus made was to settle and compromise a doubtful litigation, then unsettled by the decisions of our courts.

Field, after obtaining the negroes, and hearing of the decision of the main question by the high court of errors and appeals, refused to pay the $1,200, and this suit was brought to compel him to abide by his compromise.

The following charges were asked by the appellants and refused by the court below, being the only charges asked upon which the court gave a decision.

1. " The forfeiture of the forthcoming bond in the case of *Abert, use of the Commercial Bank of Columbus,* v. *Peale et. al.,* executed by Jones and Carter, was a satisfaction and extinguishment of the original judgment against Peale, Jones, and Leech; that the execution which issued on the said original judgment and levied on slaves Joe and Marinda, after the said forthcoming bond had been forfeited, was a nullity and void; and that the levy on said slaves under said execution was null and void and no levy."

2. " That the fact that Hand and Huddleston were securities

of Jones on the injunction bond, and as such held liable to the ultimate payment of the judgment, did not make Hand and Huddleston usees or beneficiaries in the contract declared on, and that they could become usees only by virtue of proving that the said judgment or contract was assigned to them, and in the absence of proof of such assignment, Hand and Huddleston had no right of action."

3. "If the jury shall believe from the evidence that the trustees of said Commercial Bank sold the judgment against Jones and others, without reserve, the contract declared on was thereby abandoned, and all right of action on the contract sued on was gone."

The jury found a verdict in favor of Weir et al., and Field prayed a writ of error to this court.

*R. Evans,* for appellant.

It was error to let the case go to the jury without disposing of the demurrer to the plea of former recovery. *Harper* v. *Bondurant,* 7 S. & M. 397; *Vance* v. *Isabel,* 13 Ib. 371; 6 How. 500; 1 S. & M. 340; 6 Ib. 475.

If the above issue formed by the replication of *nul tiel record* to defendant's plea of former recovery, be not superseded by the subsequent amendment of the declaration and the pleadings thereunder; then the court below also erred in giving judgment on the general issue when the issue formed by the replication of *nul tiel record* was undisposed of. *Heyfron* v. *Union Bank,* 7. S. & M. 434.

1. The first charge asked for the defendant below was asked in the language of decided cases of the high court of errors and appeals, and yet it was refused by the court. *Field* v. *Morse,* 1 S. & M. 347; *Conn* v. *Pender,* Ib. 386; *Pender* v. *Felts,* 2 S. & M. 535; *Bell* v. *Tombigbee Railroad,* 4 S. & M. 549, and other cases.

2. The second charge asked for defendant is clearly the law, and ought to have been given.

3. The third ought to have been given, as the jury might have believed from the evidence of Murdock that payment of

the judgment on the injunction bond was made to Butterworth, that Butterworth was the vendee.

*Potter*, on the same side.

The promise of Field was utterly null; there was no consideration. Mere forbearance to sue is not enough; there must be proof of a well founded claim, " a well founded legal or equitable demand." " It is essential that the claim should be sustainable." Chitty on Contracts, 29, 30. So, as to the levy on the slaves and the consideration alleged to arise from the agreement to release the levy, there was no consideration. The waiver of a mere bald pretence is no consideration; the claim waived must be at least " colorable." Chitty on Contracts, 38. And there was no pretence of such a claim. This court had, repeatedly, decided that such an execution and levy were utterly void. 3 How. 60, decided in 1838. The promise relied on was made some time in 1842. This court has decided that no motion could be made to quash a forthcoming bond, on any ground such as suggested in this case, after return term. *Wanzer* v. *Barker*, 4 How. 369. And the decision went upon a want of jurisdiction to vacate a judgment, after term passed.

*Wm. L. Harris*, for appellees.

A compromise of conflicting and doubtful claims is not only a sufficient consideration to support an agreement, but is one highly favored in law. Chitty on Contracts, 44, note 2, and authorities cited.

The giving up a suit or proceedings instituted to try a question respecting which the law is doubtful, is a good consideration for a promise to pay a stipulated sum. Chitty on Contracts, 45, and note 1.

A compromise made in view of the law as then understood, when the parties were acquainted with all the facts, will not be avoided, although the supreme court subsequently decide the point of law different from the understanding of the parties at the time of the compromise. 2 Johns. C. R. 59, 60. This case

Field v. Weir et al.

was reversed in the court of errors, but not on this point. *Lyon* v. *Richmond.* As to promise, see Walker, R. 132, 197.

2. As to the assignment of the $1,200 contract with Field, the record shows, from the commencement of the negotiation, it was for the benefit of Hand and Huddleston; they were represented by their agent, parties to the negotiation, and so understood by Field. They really controlled the execution by permission of the trustees and their attorney, to save themselves from impending loss. The equity of the contract was theirs the moment they paid the injunction bond judgment. *Brown* v. *Ellis et al.* 13 S. & M. 392, &c.

The granting or refusal of new trials is one in the legal discretion of the court, except as prohibited by our statute. Where substantial justice has been done, courts will not interfere, even though it has been reached by the violation of technical rules. See authorities collected on this point in the case of *Hairston* v. *Sale.* See 4 How. 231; 5 Ib. 495; 11 S. & M. 169; 12 Ib. 669. Only two new trials can be granted where there have been concurring verdicts against the same party. *Stamps* v. *Bush,* 7 How. 255; *Mann* v. *Perkins,* 1 S. & M. 412. The statute is peremptory, and the settled rule of this court is, not to engraft judicial legislation upon statutes, or to make exceptions where the statutes have made none. See decisions on statutes of frauds and of limitations.

In Tennessee, it has been decided that, "If a party has obtained two new trials, and seeks to set aside the third verdict against him, the record must show that one or both of the previous verdicts have been set aside for error in the charge of the court, or on the admission or rejection of evidence, or for the misconduct of the jury, or the like." *Turner* v. *Ross,* 1 Humph. R. 16; *Wilson* v. *Green,* 7 Ib. 517.

Where proof is admitted without objections and goes to the jury, it is too late to remedy the admission, or to make objection, by getting instructions from the court to the jury to disregard it, or to take exceptions to it on a motion for a new trial. *Cage* v. *Keith,* 13 S. & M. 295; *Mississippi Union Bank* v. *Graves,* 12 Ib. 130. A party cannot do away with the effect

of the pleadings and issues by charges from the court.   It is admitted that the testimony was properly and legally before the jury; and a new trial upon the same proof would produce a like result.   The charges asked by plaintiff are not marked " given," or "refused," and the bill of exceptions only shows they were asked.

The issue of *nul tiel record* is to the court; and where the judgment to which it was interposed was read to the jury without objection, the inference is, that the plea was disposed of or waived by the party.   *Thompson* v. *Williams*, 7 S. & M. 270.

Where pleas were filed on which issues were taken, and another plea to which a demurrer was sustained; and on a judgment of *respondeat ouster* the defendant plead a similar plea, to which a like demurrer was filed, of which last demurrer the record showed no disposition but the parties, went on to trial, on the issues made up; held, that the high court of errors and appeals would presume that the parties waived the last demurrer.   *Smith* v. *Elder*, 7 S. & M. 307.

Where a plea is filed at a term subsequent to that at which the process is returned served on the defendant, and the record does not show that this plea is filed by leave of the court, the plea will be so radically defective that it may be disregarded by the plaintiff.   The record must show the permission to file affirmatively.   If, therefore, a verdict be rendered, and such a plea be undisposed of in the record, and it does not appear by the record that it was filed by leave, it will not be error. *Wright* v. *Alexander*, 11 S. & M. 411.   After the pleadings have once been made up, their amendment, by filing additional, is a matter within the discretion of the court, and not ground for writ of error.   5 How. 525.

There is nothing in the act of 1840 which precludes the court from permitting pleas to be filed at a term subsequent to the one at which the process is returned served, which contains matter for the finding of a jury.   *Peyton* v. *Minor*, 11 S. & M.

The pleadings are expressly required to be made up at the first term, so as to be at issue; when the pleadings are made up

Field *v.* Weir et al.

each party must abide his pleading, or if he wish to change or amend them he must have leave of the court for that purpose. *Walker* v. *Walker*, 6 How. 512.

*Christian,* on the same side.

Mr. Chief Justice SMITH delivered the opinion of the court.

The writ of error in this case was sued out to reverse a judgment rendered in the circuit court of Lowndes county, against the plaintiffs in error, and in favor of the defendants. Several exceptions were taken to the judgment. We shall notice first those which arise out of the pleadings in the cause.

The declaration, which contained three counts, was filed in the April term of the court, in 1845. The defendant pleaded, 1. The general issue; and 2. A plea of former recovery. Issue was joined on the first plea. The plaintiffs replied to the plea of former recovery "in short," by consent, that "said case in said plea mentioned was not for the use of the said usees, Hand and Huddleston, and was decided for the cause, amongst others, in favor of the said defendant, that said usees were entitled to the proceeds of said contract in said declaration mentioned." To this plea there was a second replication of *nul tiel record*, which was also pleaded "in short" by consent. At the following term of the court, October, 1845, the cause was tried by a jury, and a verdict was found for the plaintiffs, which was set aside upon motion of the plaintiffs in error. In September, 1846, the defendants in error filed, without leave of the court, three additional counts as an amendment of the declaration; and the plaintiffs in error, in October thereafter, filed another plea of former recovery, similar to the first plea of the same character, and to the two first counts of the amended declaration, and a joint demurrer to the four last counts of the same. The plea and demurrer were filed in vacation and without special leave of the court. Attached to the second plea of former recovery there is this entry, namely: "Demurrer in short by consent," signed, "A. G. Smith, attorney for plaintiffs." No disposition of this demurrer appears,

Field *v.* Weir et al.

from the record, to have been made.   The demurrer to the declaration was overruled, and no additional pleas were interposed to the counts to which it applied.   Upon this state of the pleadings a second trial was had, in April, 1847, which resulted in a second verdict for the defendants in error, which upon motion was also set aside, and a new trial granted.   Two mistrials ensued.   In 1852, without any alteration in the pleadings, the cause was tried a fifth time, when the jury found a third verdict for the defendants in error.

It does not appear that on the last trial, or at any of the four preceding trials, objection was made by either party to the introduction of any of the evidence submitted to the jury. Upon the rendition of the last verdict, the plaintiff in error again moved for a new trial, which being refused, he filed his bill of exceptions, and placed the evidence upon the record.

1. It is insisted that it was error in the court to proceed to trial and final judgment, not having disposed of the demurrer to the second plea of former recovery.

It is settled by numerous decisions of this court that it is error for which the judgment will be reversed, to submit a cause to a jury upon issue joined, without disposing of a demurrer to one of the pleas interposed by the defendant.   But in the case at bar, the plea demurred to, if the entry on the record can be held to amount to a demurrer at all, was filed after the time limited by the statute for making up the pleading in cases pending in court.   Near eighteen months had elapsed from the time of commencing the suit to the filing of the plea, consequently one term had intervened between the trial term and the time when it was done.   The plea was therefore a nullity. 11 S. & M. 411.   And being so, it was not incumbent upon the plaintiffs to answer it.   It is true they had filed additional counts as an amendment to their declaration; but the plea in question was applied to the first and second counts of the original declaration, which were unaltered.   This, we think, is a sufficient reason why the objection should not be entertained.

If it were admitted that the plea was filed within the time limited for making up the pleadings, or under leave of the court,

Field *v.* Weir et al.

it would nevertheless, under the circumstances, be improper to insist upon a rigid application of the rule. A plea of the same character, and similar in terms, which purported to answer the whole declaration, was already on file. Under this state of the pleadings, there were four trials and two verdicts, both of which were found for the defendants in error. It nowhere appears, in the record, that any action of the court, or any objection by either party was based upon the fact, that the demurrer was undisposed of. It may, therefore, fairly be presumed, that the plaintiff in error was not thereby injured; or that the plea itself was waived.

2. In the next place, it is contended that unless the issue tendered by the replication of *nul tiel record* to the original plea of former recovery, was not superseded by the amendment of the declaration and the pleadings applicable to the same, it was error to proceed to final judgment on the general issue, when the issue upon the replication of *nul tiel record* was undisposed of.

We do not think that the pleas interposed to the original declaration were superseded by the amendment made to the declaration by the defendants in error. Such a result would follow as of necessity only where the amendments made to the declaration would render the pleadings improper or inapplicable. Such was not the case here.

The issue closed upon the replication of *nul tiel record* was to the court. Regularly, therefore, that issue should have been determined, before the cause was submitted to the jury, unless waived by the parties. This does not appear to have been done expressly. It does not appear that the defendants in error insisted upon the decision of that issue, or that the plaintiff offered evidence in support of the plea to which the replication referred. After two mis-trials and three concurring verdicts against him, it is too late for him to insist that the judgment should be vacated and a new trial awarded, because it does not appear affirmatively that the issue was not determined. We are bound to presume that it was waived.

3. It is further objected, that the court erred in overruling the

demurrer to the four last counts in the declaration. We do not think that exception is well taken.

The fourth count, which is the second one to which the demurrer was applied, alleges a good cause of action. The demurrer was joint as to the four counts above specified. Hence, if it were admitted that the third, fifth, and sixth counts were obnoxious to the exceptions taken to them, the demurrer was, notwithstanding, properly overruled.

4. It is next insisted that the judgment should be reversed, and a general judgment entered in this court in favor of the defendant below.

In support of this position, counsel contend that there is a distinct admission upon record, that there was a former recovery by the plaintiff in error upon the same cause of action for which this suit was brought. This admission, it is insisted, is contained in the replication to the plea of former recovery, filed previous to the first trial. The replication referred to, was an informal reply to the plea " in short," according to a practice which, though tolerated by the courts, ought to be discountenanced. It alleges " that said case in said plea mentioned, was not for the use of the said usees, Hand and Huddleston, and was decided in favor of said defendant, for the cause, among others, that said usees were entitled to the proceeds of said contract in said declaration mentioned." That is, the plaintiff in error recovered in the action referred to in the pleading, by proving that the party in whose name or for whose use the suit was brought, was not the equitable owner of the proceeds of the contract.

The rights of the equitable owner of the various securities for the payment of money, are recognized, to a limited extent, in courts of law; and these courts will give to them every aid consistent with their established modes of procedure. 1 Wheat. R. 233; 13 S. & M. 567. Hence the right of the equitable assignee to use the name of the person holding the legal title for the collection of the money, may be investigated in a court of law, and if found not to exist, a recovery will be defeated. In such a case, however, the legal title is not drawn in question; but the right of the party, claiming the equitable interest,

to put in issue the legal title of his assignor, is the point in controversy. If in the case alleged in the plea, the suit was brought for the use of a party not holding the equitable interest in the proceeds of the contract sued upon, it is manifest, that a recovery by the plaintiff in error would be no bar to the present suit. But if the suit were brought by the nominal plaintiffs in this action, and not for the use of any one else assuming to hold the equitable title, it is at least doubtful whether a recovery could have been legally defeated by proof showing that Hand and Huddleston, the usees, were in fact the owners of the equitable title to the proceeds of the contract. We know of no case in which the owner of the legal title in an action at law has been defeated, where suit was brought in his own name, upon the isolated allegation that the equitable title was in another. On the contrary, it has been holden that such a defence was not maintainable.* *McHenry* v. *Ridgly*, 2 Scam. 309; *Chadrey* v. *Lewis*, 1 Gilman, 153. But assuming that the suit in question was, in fact, brought by the nominal plaintiffs, without any statement upon the record that it was instituted for the use of some one else, and that a recovery was defeated upon the ground as alleged, that Hand and Huddleston were the equitable owners of the contract upon which the action was based, we apprehend that the recovery would not bar them in the present suit. For upon that hypothesis, the legal title would not be the subject of adjudication, any more than in the case where the equitable title of the usee was alone put in issue. We think, therefore, that the replication does not amount to a confession of a former recovery as averred in the plea.

5. The statute provides, that "no more than two new trials shall be granted to either party in the same case." It is, therefore, unnecessary to ascertain whether or not the finding was warranted by the evidence submitted to the jury. But it is insisted, that the court erred in giving as well as in withholding instructions which were asked for by the respective parties. This action of the court is relied on as a reason for reversing the judgment.

The charges asked for the plaintiffs are not marked as given or refused, and the record only states that they were requested.

Before the adoption of the statute on the subject, no instruction of the court to the jury would be noticed by this court, unless the party objecting did so by a bill of exceptions signed by the judge.   Now it is sufficient if the instructions are indorsed by the clerk as given or refused.   It would also be sufficient, if the record stated directly that the charges objected to were either given or withheld.   Here there is no such statement, and we think we cannot legally notice them.   We will proceed, then, to consider the charges requested by the defendant and refused by the court.

It appears from the record, that a forthcoming bond, in the case of *Charles H. Abert, use of the Commercial Bank of Columbus, Miss.* v. *Pearl et al.*, was executed by said Jones and Carter, and returned forfeited ; and that at a term of the court subsequent to the return term, the said bond, upon motion, was quashed.   An execution was then sued out upon the original judgment, and levied upon the property which was the subject-matter of the contract, upon which this suit was brought.   The property levied on consisted of slaves, which were claimed by the plaintiff in error.   It had not then been decided by this court, that a judgment or order of the circuit court quashing a forthcoming bond, upon motion, made after the return term, was absolutely void.   It was believed by the parties concerned, that two of the slaves levied on were certainly liable to sale under the execution in satisfaction of the plaintiffs' judgment, and that the remainder might be made liable under a proceeding in equity.   Under this belief in regard to the legal rights of the parties, the plaintiff in error entered into the agreement upon which this suit is founded, with the nominal plaintiffs in this action, who were the owners, as the trustees of the Commercial Bank of Columbus of Abert's judgment for the use of the bank against Pearl and others, in consideration that the trustees would release the two slaves supposed to be liable under the said execution, and forego the bringing of a suit in equity to subject the rest.

Upon these facts, the plaintiff in error requested the court to charge the jury, that " the forfeiture of the forthcoming bond in the case of *Abert, use of the Commercial Bank of Columbus*, v.

*Sylvester Pearl and Leach,* executed by Jones and Carter, was a satisfaction and extinguishment of the original judgment against Pearl, Jones, and Leech; that the execution which issued on the said original judgment, and was levied on the slaves Joe and Marinda, after said forthcoming bond was forfeited, was null and void, and that the levy on said slaves under said execution was null and void and no levy."

One of the questions before the jury was, whether the consideration of the agreement sued on had failed, or whether there was any consideration to sustain it. It is well settled that a compromise of conflicting and doubtful claims, or the giving up a suit or proceeding instituted to try a question respecting which the law is doubtful, is a sufficient consideration to support an agreement or a promise to pay a stipulated sum. Chitty on Cont. 44, 45, and authorities cited; 2 Johns. Ch. R. 59. It was perfectly immaterial, therefore, whether the execution referred to in the instruction was void or not. The agreement was made in view of the law as it was then understood by the parties, who were well acquainted with the facts of the case. The instruction was inapplicable to the evidence before the jury, and although it laid down a correct principle of law, it was properly refused by the court.

It is unquestionably true that a person may become equitably entitled to the benefit of contract, without there having been any formal assignment, or a transfer by delivery. Such was the fact which evidence before the jury tended to prove. The second instruction of the plaintiff in error was, therefore, properly withheld by the court.

The third instruction was also correctly refused. There was no evidence which showed that the judgment in favor of Abert, for the use of the Commercial Bank of Columbus, was sold either with or without reserve by the trustees.

The amount of the judgment on the injunction bond, which was paid by Hand and Huddleston, the usees in the present action, was less than the amount due on the judgment in favor of Abert, for the use of the bank, by about the sum agreed to be paid to the trustees by the plaintiff in error. The payment, therefore, of the judgment on the injunction bond, could in no-

wise be held to extinguish the contract on which this suit was brought.

This disposes of the last exception, and finding no error in the record which requires us to reverse, we affirm the judgment.